UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DANIEL SWARTOUT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:20-cv-01424-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 23, 26)** |

### I.　　Introduction

Plaintiff Mark Daniel Swartwout ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 23, 26, 29. After reviewing the record the Court finds that substantial evidence and applicable law do not entirely support the ALJ's decision. Plaintiff's appeal is therefore granted.

### II.　　Factual and Procedural Background[2]

On June 9, 2017 Plaintiff applied for disability insurance benefits and supplemental security income alleging disability as of March 8, 2017 due to back problems, neck problems, anxiety disorder, blindness, hand/wrist/arm problems, cyst, and knee problems. AR 165, 170, 214. The Commissioner denied the applications initially on November 27, 2017, and on reconsideration on

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 and 10.
[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

April 26, 2018. AR 99; 106. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on November 20, 2019. AR 39–64. On December 12, 2019 the ALJ issued a decision denying Plaintiff's application. AR 15–36. The Appeals Council denied review on August 4, 2020. AR 1–6. On October 6, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III.  **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. <u>The ALJ's Decision</u>

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 8, 2017. AR 20. At step two the ALJ found that Plaintiff had the following severe impairments: cervical spine degenerative disc disease status post November 30, 2017 laminectomy and foraminotomy; degenerative disc disease of the lumbar spine; obesity; depression; and generalized anxiety disorder. AR 20. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: facial cyst, testicle cyst, and glaucoma. AR 21. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) with a limitation to sitting 6 hours, standing/walking 2 hours, occasionally pushing and pulling,

occasionally reaching overhead, frequently reaching in other directions, and occasionally performing postural activities. AR 23. As to his mental limitations, the ALJ concluded he could: perform simple tasks; perform some detailed tasks with a specific vocational preparation (SVP) of 4 or less; frequently interact with supervisors and coworkers; not perform tandem tasks or work as part of a team; not have customer service interaction with the public; not work in a stringently production or quota based environment; not perform fast paced assembly line work, but can meet production requirements that allow one to sustain a flexible and goal oriented pace. AR 23–24.

At step four the ALJ concluded that, considering his RFC, Plaintiff could not perform his past relevant work as a machine operator which was performed at the heavy exertional level. AR 28. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy at the sedentary exertional level, namely: inspector, assembler, and sorter. AR 29. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his alleged onset date of March 8, 2017. AR 30.

V.      **Issues Presented**

Plaintiff asserts two claims of error: 1) that the ALJ improperly discounted his subjective symptom complaints, and 2) that the ALJ "erred in failing to develop the record when she failed to get clarification from Dr. Windman regarding psychiatric limitations and should have recontacted her or further developed the record given the significance of the findings." Br. at 13, 22.

   A.      **Plaintiff's Subjective Symptomology**

      1.      **Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2. Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering.  AR 24.  Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

Plaintiff testified in relevant part that he cannot lift his arms as they go numb.  AR 45.  He couldn't feel a pen in his hand and could not write legibly.  AR 45.  His neck surgery helped for about a month after which his symptoms were worse than before.  AR 46.  Extended sitting caused rectal pain and bleeding due to hemorrhoids.  AR 46.  The five-hour drive for the hearing, part of which he spent lying down in the back seat, caused rectal bleeding.  AR 46, 49.  He could lift five pounds but not 10.

It is worth clarifying at the outset in which respects the claimant's testimony was in actual

conflict with the ALJ's assessed RFC. As with any unfavorable decision, the ALJ's opinion contains the familiar boilerplate language finding that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24. But any attempt at a critique of an ALJ's ensuing reasoning (however guided or misguided that reasoning may be) is a futile exercise unless Plaintiff did in fact testify to the existence of limitations greater than the ALJ included in the RFC. *See Jamerson*, 112 F.3d at 1066 (errors are harmless if inconsequential to the nondisability determination)

In some respects Plaintiff's testimony was sufficiently specific that, if credited as true, it would require more restrictive limitations than the ALJ included in the RFC. The ALJ's finding that he could occasionally lift overhead and occasionally lift 10 pounds is in conflict with his testimony that he could not lift his arms without his hands going numb, and could not lift 10 pounds.

Plaintiff highlights other testimony that was more equivocal, or was not in direct conflict with any component of the RFC. He indicated he could stand and walk for 10 to 15 minutes, though there was no indication he could not do so for a total of two hours in a day, as required by the RFC. Moreover, he equivocated regarding those limitations suggesting that his standing and walking capacities, respectively, were dependent upon various factors including his willingness to persevere through the pain, the air temperature, and the difficulty of the walk. AR 57–58. This testimony, even if credited as true, would not preclude sedentary work. *See* 20 C.F.R. § 416.945 (RFC is the most you can do despite your limitations).

Plaintiff also highlights testimony that, due to hemorrhoid pain, he could not sit for more than two to three minutes comfortably. After that he would need to get up or "start switching cheeks." AR 56. When asked how long he would need to stand before he could sit back down, he responded "whenever I feel like dealing with it." AR 57. This testimony was somewhat equivocal and not in direct conflict with the RFC as it suggests (similar to his standing and walking capacities) that his sitting capacity was dependent in part on his willingness to deal with the discomfort. *See again,* 20 C.F.R. § 416.945 (RFC is the most you can do despite your limitations). Moreover, despite testimony concerning previous rectal surgery and additional surgery upcoming, he points

to no evidence in the record indicating treatment for his rectal problems. The only record Plaintiff cites is a September 29, 2017 follow up visit for psychiatric medication management. AR 423. Under history of present illness, the visit notes indicate he is pending spine surgery and lists rectal bleeding as one of four co-morbidities in addition to testicular cyst, neuropathy and vision problems. AR 423. There was no associated treatment or diagnoses related to his rectal bleeding. The ALJ appropriately noted that there was very little evidence regarding his rectal problems and declined to include associated limitations. Plaintiff does not overtly dispute that conclusion.

Finally, Plaintiff highlights testimony that he had horrible anxiety, had meltdowns leading to tears, was currently being transferred to another psychiatrist, had problems concentrating and remembering what others say, and his pain makes his depression worse. AR 54–56. None of this testimony, even if credited as true, is in conflict with the RFC. The ALJ did not reject the notion that Plaintiff had mental limitations. She found his anxiety and depression to be severe impairments and included associated limitations related to task complexity, social interaction, production output, and pace. Plaintiff does not explain how his testimony, if credited as true, would require more stringent limitations than the ALJ included in the RFC. Accordingly, his argument falls short in that respect. *See Juniel v. Saul*, No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff 'could not have public contact' and limited interaction with co-workers.").

In another instance, whether Plaintiff's specific testimony was in actual conflict with the RFC, namely as to his ability to lift his arms and lift 10 pounds, a review of the ALJ's reasoning reveals it was clear and convincing in some respects but not in others:

> I note inconsistencies in the record that undermine the persuasiveness of the claimant's subjective complaints. The claimant testified that his cervical-spine surgery helped for only about a month, but his medical records indicate that after that surgery, he regained strength in his arms, and nothing shows a subsequent loss of function. The claimant testified that he stopped working in 2017 because the company changed ownership, but he told Dr. Windham that he was fired for clocking another employee in and out (Exhibit 14F, p. 5). The claimant alleges

8

> disability based in part on mental-health issues, but the record reflects only limited mental health treatment notes, which reflect symptoms related mainly to stressors related to family and work problems. There is no recent psychiatric treatment and the treatment was conservative for mental health complaints. At the hearing, the claimant cited knee and rectal problems as reasons why he could not work, but there is very little medical evidence regarding such conditions.
>
> Moreover, the medical record is not consistent with the claimant's alleged level of limitation. As previously discussed, the medical evidence reflects improvement after the claimant's cervical spine surgery (Exhibit 20F) and the evidence is not fully consistent with the claimant's statements regarding his mental limitations. The claimant's subjective complaints are also inconsistent with the examination findings and opinion of the consultative examiner (Exhibit 12F).
>
> The claimant's daily activities also appear to be more robust than he alleges and inconsistent with his alleged level of functional limitation. It was noted in February 2018 that he enjoyed computer games, he could bathe himself, drive a car, and get up form a bed or from a chair (Exhibit 16F). In addition, the evidence reflects a May 2019 trip to Texas where he was wading in swampy water or a creek up to his knees (Exhibit 23F p. 31). He testified that he had not traveled at all but then when asked about the trip to Texas referred to in his records, he testified that he did travel there, for a funeral, and that he had to wade through water to get to the burial site (see also Exhibit 23F p. 9 (on September 4, 2019, it was noted that he went on a trip "yesterday")). These various inconsistencies further diminish the claimant's persuasiveness.

AR 27.

First, the ALJ discredited Plaintiff's allegation that his cervical spine surgery only provided one month of relief, noting that post-surgical records indicated he regained strength in his arms with no evidence of loss of function. AR 27 (citing AR 464). Plaintiff disputes the accuracy of this statement noting that post-surgical records still documented persistent pain at a level 4/10. Br. at 15, Doc. 23 (citing AR 463). Pain level 4/10 is not indicative of functional loss, particularly functional loss so severe as to preclude him from occasionally lifting his arms and occasionally lifting 10 pounds. Moreover, the ALJ's finding was related to post-surgical strength improvement, not pain relief. This finding was supported. The post-surgical examination notes cited by the ALJ dated February 3, 2018 noted 5/5 muscle strength in bilateral shoulder abductors, bilateral biceps, bilateral triceps, and stated "[h]e has regained strength in right upper extremity after right C5-6 hemilaminectomy" dated November 30, 2017. AR 464. Even if the ALJ's finding was related to post-surgical pain improvement, the finding would still be supported. Plaintiff underscores the post-surgical records noting continued pain at a level 4 out of 10 to suggest that the surgery was

not as successful as the ALJ found it was. Yet the pre-surgical records noted pain levels 9 out of 10. AR 473. That was a substantial reduction and supports the ALJ's finding that Plaintiff could return to work at the sedentary exertional level.

Setting aside the post-surgical improvement, Plaintiff separately contends that the ALJ did not adequately consider the extent to which his *pre-surgical* records could have supported a partial finding of disability between his alleged onset date of March 8, 2017, and his post-surgical recovery date. Indeed, prior to his surgery he reported a pain level 9 out of 10. Examination notes revealed painful cervical range of motion, reduced sensation to pinprick, tenderness to palpation of cervical vertebrae, reduced strength in right shoulder, his imaging results were remarkable for bulging disc and stenosis at C5-6, and he was scheduled for surgery. AR 469-471. A pre-surgical consultative examination dated November 3, 2017, noted 3/5 muscle strength and numbness in his right upper extremity. AR 434. Muscle strength level 3/5 is considered muscle activation against gravity only, with the examiner's resistance eliminated.[4] These records are not in conflict with Plaintiff's testimony that he could not lift his arms without numbness and that he could not lift 10 pounds.

Although the ALJ did acknowledge these records, she unduly focused on Plaintiff's improvement after surgery. The ALJ's finding as to post-surgical improvement presupposes the existence of pre-surgical deficiencies. The records cited above do suggest pre-surgical deficiencies. Considering he alleged disability onset as of March 8, 2017, underwent surgery on November 30, 2017, and the earliest dated records noting post-surgical improvement are dated February 3, 2018, there is at least a roughly 11-month period during which Plaintiff may have been disabled. The undersigned expresses no opinion as to whether or not he was disabled during that period, or whether any additional limitations were warranted to Plaintiff's RFC during that period. Rather, the ALJ should have given more specific consideration to Plaintiff's functionality during that time period and whether the evidence would support a partial disability finding.

The Court separately notes that Plaintiff's argument is uncompelling insofar as he suggests the potential period of partial disability would extend through late 2018 given his physician's

---

[4] How to Assess Muscle Strength - Neurologic Disorders - Merck Manuals Professional Edition, May 2020, https://www.merckmanuals.com/professional/neurologic-disorders/neurologic-examination/how-to-assess-muscle-strength

statement that it would take an additional 6-8 months beyond February 3, 2018 "for the recovery process to complete." AR 465. Notwithstanding the estimated timeline for full recovery, the records dated February 3, 2018 noted strength recovery in his right arm level 5/5, and pain levels reduced from 9/10 to 4/10. Moreover, in the same line where Dr. Tran estimated a 6–8-month timeline for full recovery, he recommended "avoidance of *heavy* lifting." AR 465 (emphasis added). That was his sole recommendation. He did not recommend Plaintiff avoid even occasional lifting of 10 pounds, nor did he recommend any other activity modifications during the recovery period that would have precluded performance of sedentary exertional work with the ALJ's identified limitations. Thus, Dr. Tran's post-surgical examination supported the ALJ's RFC and rejection of Plaintiff's testimony as to his continued post-surgical limitations while it also supported the notion that he could perform at least sedentary work with the ALJ's identified limitations during the recovery period.

The ALJ also discounted Plaintiff's subjective complaints because he testified "that he stopped working in 2017 because the company changed ownership, but he told Dr. Windham he was fired for clocking another employee in and out." AR 27. Plaintiff contends this was improper reasoning. Indeed, Social Security Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character," but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

Defendant contends the reason why Plaintiff left work is not only relevant for the ALJ to consider, but that the ALJ is *required* to consider that issue when evaluating his RFC. Resp. at 9 (citing 20 CFR §416.929(c)(3) ("We will consider all of the evidence presented, including information about your prior work record…"). The ALJ's discussion in no way related back to Plaintiff's ability to perform work related activities, as neither one of Plaintiff's purported reasons for leaving his job related to his ability to perform work related activities. The only potential

11

inference to be drawn from the ALJ's statement was that she was discrediting Plaintiff's testimony for one or both of the following reasons: 1) that he gave inconsistent responses regarding his reason for leaving work, and/or 2) that one of those responses revealed unethical behavior (clocking another employee in and out of work). Neither Plaintiff's general character for truthfulness nor his ethics are permissible considerations when evaluating his testimony as to his ability to perform work related activities. Social Security Ruling 16-3p makes that clear.

The ALJ's discussion of his daily activities was equally unconvincing. The ALJ noted that Plaintiff "enjoyed computer games, he could bathe himself, drive a car, and get up [from] a bed or from a chair." His enjoyment of computer games generally does not speak to the frequency or duration of his gaming, does not contradict any other testimony, and does not support the notion that he can perform sedentary work activities. Computer gaming does not require lifting his arms, or lifting 10 pounds. His ability to bathe and rise from a bed or chair are equally inconsequential considerations as they neither contradict his other testimony nor speak to his ability to perform work-related activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ may discount a claimant's testimony based on daily activities if those daily activities contradict his other testimony or if the daily activities meet the threshold for transferable work skills).

Finally, the ALJ cited Plaintiff's one-time trip to Texas for his brother's funeral during which he was required to traverse knee deep muddy water due to flooding near the burial site, he suffered a number of tick bites as a result, and ultimately wound up in the emergency department. Plaintiff's one time trip to Texas sounds like an unfortunate and distressing ordeal. Contrary to Defendant's contention, the Texas trip does not contradict Plaintiff's testimony, nor does it speak to his ability to perform sedentary work. Plaintiff was also required to appear in person at the administrative hearing five hours away to pursue his disability appeal. Attending his brother's funeral, and likwise attending his administrative hearing, are two seemingly unavoidable

exceptions to his otherwise uncontradicted testimony that he does not take trips.

Although the ALJ identified numerous unpersuasive reasons for discounting Plaintiff's testimony, the post-surgical records dated February 3, 2018 were a sufficient reason to discount his testimony at least as to the period post-dating that examination insofar as that examination noted recovery of strength 5/5 in his right arm, and pain reduction to 4/10.  AR 463-65.  Remand is nevertheless appropriate for the ALJ to give specific consideration as to whether a finding of partial disability is appropriate for the period between the alleged onset date of March 8, 2017 and the February 3, 2018 examination.

### B.     Dr. Windman's Opinion; Duty to Develop the Record

#### 1.     Applicable Law

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal.

Apr. 17, 2020).

## 2. <u>Analysis</u>

On April 9, 2018, Plaintiff reported to Dr. Windman for a psychological evaluation in connection with a worker's compensation claim. AR 444–456. Dr. Windman's report contained detailed information on the history of Plaintiff's work injury, his self-reported emotional symptoms, his personal and family history, his mental status examination results, his psychological test results, and his diagnosis. AR 444–450. Dr. Windman ultimately found Plaintiff "temporarily totally disabled on a combined physical and psychological basis." AR 451.

The ALJ rejected the opinion for the following reasons:

> I find the opinion of Dr. Windham not persuasive, as it is based on a one-time examination of the claimant. Furthermore, there are no treatment notes to support her opinion and the medical evidence does not support her opinion. The mental status examinations in the file have consistently shown that the claimant had fair concentration and attention, and fair insight and judgment (Exhibits 9F, 11F). It was noted that he was alert and fully oriented, and he could bathe himself, and drive a car (Exhibits 16F, 18F). In February 2019, he denied any anxiety or recent stressors in his life. In March 2019, he endorsed history of anxiety and depression, but he was not taking any current psychotropic medication (Exhibit 22F pp. 10, 23). His office visits noted that he was in no acute distress, he was alert, oriented, had intact cognitive function and he was cooperative (Exhibit 22F pp. 3, 7, 12). In addition, Dr. Windham does not provide any specific functional limitations, and to the extent she opines that the claimant is unable to work, that finding is not persuasive or binding as it is a determination reserved to the Commissioner.

AR 26.

First, Plaintiff takes issue with the ALJ's reason for rejecting the opinion on the basis that it was a one-time examination. Br. at 23. Plaintiff underscores that the ALJ found the opinion of the consultative examiner, Dr. Godes, persuasive even though that opinion was also based on a one-time examination. Notably, Dr. Windman's report is entitled "Primary *Treating Physician's* Initial Comprehensive Report with Psychological Test Results." AR 443 (emphasis added). Yet there is no evidence that Dr. Windman ever treated Plaintiff. In that sense, it would perhaps have been relevant for the ALJ to clarify that, to the extent the report purports to come from a treating

14

physician, it was not in fact a treating physician's opinion, but rather was a report from a one-time workers' compensation evaluation. But that was not the ALJ's observation.

Although the nature and extent of the treatment relationship, if any, is a relevant factor to consider under the regulations (20 C.F.R. § 404.1520c(c)), it is not an applicable reason here when distinguishing between opinions. The nature and extent of the treatment relationship was the same as between Plaintiff and Drs. Windman and Godes; neither doctor had a treating relationship with Plaintiff. Dr. Windman evaluated Plaintiff on one occasion in connection with a workers' compensation claim, while Dr. Godes evaluated Plaintiff on one occasion in connection with his social security disability application. Thus, the one-time nature of the examination was not a valid basis for rejecting Dr. Windman's opinion as compared to the opinion of Dr. Godes.

Next, Plaintiff takes issue with the ALJ's finding that "there are no treatment notes to support her opinion . . ." AR 26. Strictly speaking, Dr. Windman's report contains no treatment notes at all, whether supportive or unsupportive of her opinion, because she was not treating the Plaintiff. To the extent the ALJ was using the term "treatment notes" as synonymous with "clinical findings," the ALJ was still mistaken. Dr. Windman's report does contain a detailed mental status examination noting depressed and anxious mood, depressed communication, anxious thought process, preoccupation, no loss of contact with reality, full orientation, poor recent memory, adequate remote memory, diminished cognitive functioning, among others. AR 448–449. She also conducted psychological testing.

Nevertheless, Plaintiff gives little attention to the ALJ's finding that "*the medical evidence does not support* [Dr. Windman's] opinion." AR 26 (emphasis added). The ALJ cited numerous stable mental status examinations in the record showing: 1) fair concentration and attention; 2) fair insight and judgment; 3) full orientation; 4) denial of anxiety and recent stressors; and 5) intact cognitive function. *Id.* (citing Exhibits 9F, 11F, 16F, 18F, 22F; AR 404–21, 423–28, 463–65; 469–

75; 492, 496, 501). Plaintiff does not acknowledge or dispute the ALJ's discussion of these records or the inferences the ALJ drew therefrom. Even if Dr. Windman's report was internally supported by her own mental status examinations, it was not supported by the other examinations in the record.

Plaintiff also disputes the ALJ's statement that Dr. Windman did not identify any functional limitations. Dr. Windman's report contains her ultimate conclusion that Plaintiff was temporarily totally disabled on a combined physical and mental basis, and related conclusions that Plaintiff was too depressed and anxious to work. Defendant and the ALJ appropriately observed that these are statements on the ultimate issue of disability, not opinions on functional limitations. The ultimate issue of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1520b and 416.920b.

Plaintiff underscores Dr. Windman's statement that if Plaintiff "attempted to return to work, his emotional condition would deteriorate into worsened emotional dysfunction." AR 451. Plaintiff argues that this statement implies a functional limitation. The argument is unexplained. The quoted statement begs more questions that it answers, such as the extent to which there would be a worsening emotional dysfunction, what work-related capacities it would affect, and again, to what extent. Plaintiff's argument presupposes that worsened emotional dysfunction is a state of affairs to be avoided at all costs and, if it cannot be avoided, then the claimant cannot work. The regulations counsel otherwise. *See* 20 C.F.R. § 416.945 (RFC is the most you can do despite your limitations). Nothing in Dr. Windman's opinion (even if credited as true) establishes that worsened emotional dysfunction would preclude Plaintiff from sustaining gainful employment in a sedentary work environment with the limitations the ALJ added on social interaction, tandem projects, production output, and pace.

Ninth Circuit precedent does hold that an ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or

because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103 (C.D. Cal. 2002). Rather, the ALJ must evaluate workers' compensation opinions just as he or she would evaluate any other medical opinion and must "translate" workers' compensation terminology into Social Security terminology to accurately assess the implications of those opinions for the Social Security disability determination. *Id.*; *Soria v. Berryhill*, No. 1:18-CV-00089-SKO, 2019 WL 2448435, at *11 (E.D. Cal. June 12, 2019); *Herlinda C. v. Saul*, No. CV 19-2730 AGR, 2020 WL 6287716, at *4 (C.D. Cal. Oct. 27, 2020).

The statements highlighted by the parties here were not unique to the workers' compensation context, and no attempted translation thereof would have guided the ALJ's analysis here. To the extent Dr. Windman's conclusions could be taken at face value in the workers' compensation context, the same is not true in the social security context. Dr. Windman's conclusions would not help the ALJ determine the extent to which Plaintiff's depression and anxiety limited his ability to perform mental work activities such as understanding, carrying out, and remembering instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b). Plaintiff did not attempt to address this issue and the Court has no obligation to fill in this gap in Plaintiff's analysis. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Plaintiff's one paragraph argument on this issue asserts only that "the ALJ could and should

have recontacted Dr. Windam for clarification as she found the opinion ambiguous." The Court disagrees. The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Here, the ALJ made no finding that the record was ambiguous are inadequate for adjudication, and Plaintiff offers no explanation as to how the record itself establishes that ambiguity or inadequacy. Each piece of evidence within a voluminous administrative record need not be a model of clarity, or even legibility, for the record as a whole to be sufficient for adjudication. The record here was sufficient for adjudication; Dr. Windman's report simply did not aid in that process. Despite the ALJ offering several unpersuasive reasons for rejecting Dr. Windman's report, the ALJ did underscore numerous stable mental status examinations in the record. These contrasted with the examination findings in Dr. Windman's report, as discussed above. Thus. even if the reasonable implication of Dr. Windman's report is that Plaintiff had work preclusive limitations in one or more of the specific mental functioning categories evaluated by the Commissioner, the opinion would lack support from the broader medical record. Contacting Dr. Windman for further clarification would not have cured this deficiency. Accordingly, the ALJ appropriately rejected Dr. Windman's report.

### VI. Remand for Further Proceedings

The ALJ appropriately rejected Dr. Windman's report, and the ALJ appropriately found Plaintiff not disabled as to the period on and after the February 3, 2018 post-surgical examination, specifically noting regained right upper extremity strength and significant pain reduction.

However, the ALJ should have given specific consideration to whether more substantial limitations were warranted for the period between Plaintiff's alleged disability onset date of March 8, 2017, and the February 3, 2018 post-surgical examination, particularly in light of objectively documented pre-surgical right upper extremity weakness, sensory loss, and substantial self-reported pain levels. Remand is appropriate for the ALJ to consider the same and proceed through the sequential analysis as appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do support the ALJ's conclusion that Plaintiff was not disabled for the period on and after February 3, 2018.  However, substantial evidence and applicable law do not support the ALJ's finding that Plaintiff was not disabled between March 8, 2017 and February 3, 2018.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted in part. The Clerk of Court is directed to enter judgment in favor of Plaintiff Mark Daniel Swartout, and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 23, 2022**                    **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE